# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| **WILLIAM MOTT**, *on behalf of himself and all others similarly situated*,<br><br>                *Plaintiff*,<br>  v.<br><br>**GEE'S HEATING AND AIR, INC.**,<br><br>                *Defendant*. | Civil Case No.: _____<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This action arises out of the illegal marketing practices of Defendant, Gee's Heating and Air, Inc. ("Gee" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.      Defendant sends telemarketing text messages advertising Defendant's products and services.

3.      Defendant continues to send telemarketing text messages even after Defendant receives requests from the called party requesting that Defendant stop sending its text messages.

4.      Accordingly, Plaintiff brings this action on behalf of himself and classes of similarly situated individuals.

1

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6.    This Court has jurisdiction over Defendant because Gee conducts business transactions in this District and made calls into this District targeting residents of this District as part of the business it conducts in this District.

7.    Specifically, Defendant targeted a resident of this District who's cellular telephone number has an area code (*i.e.*, 678) that is associated with this District – confirming that Defendant *knew* it was calling into this District.

8.    Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

9.    Plaintiff William Mott ("Mr. Mott") is, and at all times mentioned herein was, a citizen and resident of Gainesville, Georgia.

10.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11.    Defendant is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Georgia with a principal office address located at 3340 Robinson Road, Gainesville, GA 30506.

2

12.    Defendant may be served via its registered agent, Joe Gee located at 3340 Robinson Road, Gainesville, GA 30506.

13.    Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## **TCPA BACKGROUND**

14.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *National Do Not Call Registry*

15.    The TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

16.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

17.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §

3

64.1200(c)(2).

18.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

*Internal Do Not Call Regulations*

19.    The TCPA also required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

20.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

21.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

22.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

23.    However, recognizing that an honor system would probably be

insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

24.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

25.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

26.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

27.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

28.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

29.    A company must comply with the procedures for the company specific do-not-call list. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

30.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

31.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.

*See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

33.    Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## **FACTUAL ALLEGATIONS**

34.     Plaintiff is the user of his personal cellular telephone number (678)-XXX-7560.

35.     Plaintiff's cellular telephone number has been registered on the National Do Not Call Registry since August 8, 2009.

36.     Plaintiff registered his telephone number on the National Do Not Call Registry because he did not want unsolicited telemarketing calls and text messages.

37.     On or about December 20, 2023, Plaintiff began receiving telemarketing text messages from Defendant.

38.     These message came from telephone number (678) 792-3909.



39.    As shown above, the messages identified Defendant as the sender of the messages.

40.    On May 13, 2024 at 8:21pm, Plaintiff responded "Stop."

41.    Plaintiff received a confirmation message after his "Stop" message explaining he would "not receive any more messages . . . ."

42.    Despite responding "Stop" and receiving confirmation that Plaintiff would receive no more messages, on January 26, 2024, Defendant began to text Plaintiff from a different telephone number (678) 679-2363:



43.    On November 8, 2024, Plaintiff began receiving messages from Defendant from yet another number.

44.    As shown below, these messages came from telephone number (470) 567-6647.



45.    Plaintiff did not provide prior express invitation or permission or consent for the telephone messages he received.

46.    To the extent Defendant had *any* consent to call or text Plaintiff revoked that consent by sending Defendant a "Stop" message on May 13, 2024, specifically telling Defendant that he did not wish to receive any more messages from Defendant.

47.    Defendant's violations were, at a minimum, negligent.

48.    Alternatively, Defendant's violations were willful and knowing.

49.    For example, numerous consumers have turned to the internet[2] to complain about Defendant's unwanted telemarketing practices:



_____

   [2]  https://www.yelp.com/biz/gee-heating-and-air-gainesville-2#reviews (last accessed Jan. 16, 2025); https://g.co/kgs/5wstMok (last accessed Jan. 16, 2025); https://g.co/kgs/vBi8fGY (last accessed Jan. 16, 2025); https://g.co/kgs/6rFkbGh (last accessed Jan. 16, 2025); https://g.co/kgs/8itTTSV (last accessed Jan. 16, 2025); https://www.bbb.org/us/ga/gainesville/profile/heating-and-air-conditioning/gees-heating-air-inc-0443-27137780/customer-reviews (last accessed Jan. 16, 2025).



**Yessenia G.**
Gainesville, GA

 0    1    0

⭐ Oct 31, 2022

This company just gives aways your number and email to anyone who works there to spam you like crazy. I have a years worth of call records , text messages , and emails about if I'm interested in a tune up. The only service I HAVE EVER received was just putting a new GAS line to a part of our home. Nothing with our AC unit. I have records of asking to remove me from the call list and to STOP texting and it still happens. It's ridiculous. I've counted 4-5 calls where I speak to a different person and I specifically say STOP CALLING. REMOVE ME. and yet it happens again within weeks. And the last person I spoke to said "sorry but I can only remove you from my call list. everyone in the company has their own and will continue to call and reach out" so WHO KNOWS WHO ELSE HAS MY NUMBER AND WILL KEEP HARASSING ME. This is insane how I can't just text STOP to all these employees reaching out (and never reply back with a response) and when I actually pick up calls from Gee heating and air and ask to be removed it still happens. Here's a message to the marketing team.... When someone's isn't interested please stop bothering them.



Helpful 0    Thanks 0    Love this 0    Oh no 0

---



**Rob Chewning**
12 reviews · 4 photos

⭐ 6 months ago

This company has been spam **text**ing me for months. I have made a call to them each time to ask to be removed from the list. They have said they would but have not. If they cannot follow through with such a simple request I do not expect that they can fulfill other commitments either. I warned them the 4th time I called that I would post a Google review explaining my frustration if they did not remove me from the list. I just received 5th **text** from them.

---



**Mckenna Giaquinta**
5 reviews

⭐ 4 months ago

Reached out due to an air conditioning issue. Technician said that we needed a new AC. It would cost a little over 10 grand. Got a second opinion and they have kept our original AC running for another two years. Gee also continues to **text** and call despite me asking them not to contact me anymore.

---



**Emma Cimorelli**
10 reviews

⭐ 2 years ago

This company will not stop calling/**text**ing me. I have asked repeatedly to be taken off the call list and they will not stop. This is absolutely ridiculous. We didn't even use their business, just got an outrageous quote for service that we turned down. Please stop calling/**text**ing me it is extremely annoying and unprofessional.

Negative
Professionalism

---



**Safety Man**
4 reviews

⭐ 2 years ago

Used them once, two years ago, on a home I have since sold. I get calls and **text**s from them NON STOP. LEAVE ME ALONE!

Negative
Professionalism

12



50.    Plaintiff and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls and text messages.  Their privacy was improperly invaded, the Defendant's text messages temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted text messages.  Defendant's telephone calls were annoying and a nuisance and wasted the time of Mr. Mott and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

51.    Upon information and belief, Defendant uses automated systems to send text messages, to hundreds if not thousands of consumers across the U.S. as

part of its marketing strategy.

52.    Defendant sent two or more telephone solicitations to Plaintiff, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

53.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call through 47 U.S.C. § 227(c).

54.    Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

55.    Defendant made two or more telemarketing calls to Defendant despite not having in place the required policies and procedures prior to making such calls – as evidenced by Defendant's failure to stop texting Plaintiff when she requested. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

56.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

57.    Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

58.    Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions,

including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

59.    To the extent Defendant outsourced its illegal texting campaigns, it is still liable for calls that violate the TCPA.

60.    Defendant is liable for third-parties' actions because it took steps to cause the texts to be sent, and because the texts were sent pursuant to Defendant's actual authority, apparent authority and/or ratification.

61.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief.  As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

62.    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

63.    Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Classes," as defined as follows:

> **National Do-Not-Call Class**:  Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

> **Internal Do-Not-Call Class**:  Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period, including at least one after the person requested that the calls or messages stop from four (4) years prior to the filing of the Complaint to the date of class certification.

65.    Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs

and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

66.     The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

67.     The Defendant's records will reveal the precise number of class members.

68.     The exact number and identities of the people who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

    a.  The time period(s) during which Defendant or its agent(s) sent the text messages at issue;

    b.  The telephone numbers to which Defendant or its agent(s) sent the text messages at issue;

    c.  The telephone numbers for which Defendant had prior express written consent;

    d.  The telephone numbers that replied to Defendant's text messages with a message communicating a desire that Defendant stop sending text messages;

    e.  The purposes of such text messages; and

    f.  The names and addresses of Class members.

69.    Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

70.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a.  Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

    b.  Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

    c.  Whether Defendant or the entities with which they contract send solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

    d.  Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

    e.  Whether Defendant honors do-not-call requests;

    f.  Whether Defendant's statutory violations were willful and knowing; and

    g.  Whether Defendant should be enjoined from engaging in such conduct in the future..

71.    Plaintiff is a member of the Classes in that Defendant sent two or more texts for telemarketing purposes, in a one-year period to his telephone number, after

he asked Defendant to stop and while his number was registered to on the National Do-Not-Call Registry.

72.    Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

73.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

74.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

75.    Plaintiff is an adequate representative of the Classes and will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

76.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

77.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

78.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

79.    Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the National Do-Not-Call Class)

80.    Defendant made, or had made on its behalf, telephone solicitations to Plaintiff and putative National Do-Not-Call Class Members' telephone numbers.

81.    Plaintiff's and putative National Do-Not-Call Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

82.    Plaintiff and putative National Do-Not-Call Class Members each received two or more such calls in a 12-month period.

83.    Plaintiff and putative National Do-Not-Call Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

84.    Plaintiff and putative National Do-Not-Call Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Internal Do-Not-Call Class)**

85.    Defendant sent numerous text messages for telemarketing purposes to Plaintiff's and putative Class Members' telephone numbers.

86.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

87.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

88.    Defendant did so despite not recording or honoring "do not call" requests.

89.    Defendant sent two or more telemarketing text messages to Plaintiff and putative Class Members' telephone numbers in a 12-month period.

90.    Plaintiff and putative Internal Do-Not-Call Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

91.    Plaintiff and putative Internal Do-Not-Call Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing his counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages;

F.      An award of reasonable attorneys' fees and costs; and

G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** January 16, 2025

*/s/John A. Love_____*
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com


Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com


(*pro hac vice application forthcoming)